IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA   2010 AUG -4 P 2: 49

Kenneth D. McGraw, #168481,  )      C. A. No. 2:09-2787-PMD-RSC
                             )
            Petitioner,      )
                             )
         -versus-            )      **REPORT AND RECOMMENDATION**
                             )
Michael McCall, Warden of    )
Perry Correctional           )
Institution,                 )
                             )
            Respondent.      )

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the respondent's motion for summary judgment filed on April 7, 2010. 28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The petitioner, Kenneth D. McGraw, is currently confined at the Perry Correctional Institution in the South Carolina Department of Corrections[1] pursuant to orders of commitment from the Clerk of Court for York County. Petitioner was indicted by the York County Grand Jury during the May 9, 1994, term of the Court of General Sessions for Attempted Armed Robbery (1994-GS-46-1473) and Criminal Conspiracy (1944-GS-46-1474), and during

---

[1] Petitioner had previously served an incarcerative sentence as a youthful offender for Burglary, Malicious Injury to Real Property, Larceny, and Grand Larceny following a June 19, 1990, guilty plea.

1

the November 7, 1994, term of the Court of General Sessions for nine counts of Burglary, First Degree (1994-GS-46-3686, 1994-GS-46-3695, 1994-GS-46-3702, 1994-GS-46-3704, 1994-GS-46-3707, 1994-GS-46-3710, 1994-GS-46-3725, 1994-GS-46-3727, 1994-GS-46-3728), four counts of Grand Larceny (1994-GS-46-3687, 1994-GS-46-3709, 1994-GS-46-3725, 1994-GS-46-3729), seven counts of Criminal Conspiracy (1994-GS-46-3688, 1994-GS-46-3694, 1994-GS-46-3703, 1994-GS-46-3706, 1994-GS-46-3711, 1994-GS-46-3726, 1994-GS-46-3730), three counts of Petit Larceny (1994-GS-46-3693), 1994-GS-46-3705, 1994-GS-46-3708), and two counts of Breaking and Entering Auto (1994-GS-46-3696, 1994-GS-46-3697).

Petitioner was represented by Harry Dest, Esquire. App. 1-49. On January 23, 1995, Petitioner pled guilty to Attempted Armed Robbery and Criminal Conspiracy charges before the Honorable E.C. Burnett, III, Circuit Court Judge, at which time sentencing was deferred. Id. On January 26, 1995, Petitioner pled guilty to seven (7) counts of Burglary First Degree, four (4) counts of Grand Larceny over $1000, ten (10) counts of Criminal Conspiracy, three (3) counts of Petit Larceny, and one (1) count of Breaking and Entering an Automobile. Judge Burnett sentenced Petitioner to thirty (30) days confinement on each of the Petit Larceny convictions, five (5) years confinement on each of the Grand Larceny, Criminal Conspiracy, and Breaking into an Automobile convictions, twenty (20) years confinement on the

2

Attempted Armed Robbery conviction, and confinement for life on each of the Burglary, First Degree convictions with one of the Burglary, First Degree convictions to be served consecutive to another Burglary, First Degree sentences. App. 48). The solicitor nol prossed eleven (11) counts of Conspiracy, fifteen (15) counts of Burglary First Degree, one (1) count of Petit Larceny, nine (9) counts of Grand Larceny, one (1) count of Burglary Second Degree, one (1) count of Possession of a Pistol, and one (1) count of Murder. App. 7.

Petitioner timely filed a Notice of Appeal and was represented by Robert M. Dudek, Assistant Appellate Defender with the South Carolina Office of Appellate Defense. Petitioner's appeal was perfected with the filing of a Final Anders Brief of Appellant and Petition to be Relieved as Counsel. In the Final Anders Brief of Appellate, counsel argued Petitioner's guilty plea should not have been accepted as intelligently and voluntarily entered where he was not fully advised of the constitutional rights he was waiving. The South Carolina Supreme Court dismissed Petitioner's appeal in an Opinion filed August 21, 1996, and the Remittitur was issued on September 9, 1996.

Next, five years later, in a letter dated October 21, 2001, the South Carolina Department of Pardon, Probation and Parole Services (SCDPPS) informed Petitioner that he was not eligible for parole on his convictions as South Carolina law prohibits it

"from granting you parole on the sentence(s) identified below."
It cited Section 24-21-640 which states: "[t]he board must not
grant parole nor is parole authorized to any prisoner serving a
sentence for a second or subsequent conviction, following a
separate sentencing for prior conviction, for violent crimes as
defined in Section 16-1-60." The letter notified Petitioner that
it was the Department's "final decision" on this matter. It also
informed Petitioner that he had the right to appeal this final
decision within thirty (30) days by seeking review by an
Administrative Law Judge and that failure to follow the
instructions in the attached "Notice of Appeal" would result in
forfeiture of his right to challenge the Department's final
decision.

Petitioner did not file an appeal to the Administrative Law
Judge within thirty (30) days, but rather he waited over two
years until January 1, 2004, to request another copy of the
October 21, 2001, denial letter from SCDPPPS. He received the
requested letter on January 27, 2004, according to the
Petitioner. Then, six (6) months after he received the copy of
the SCDPPS letter, Petitioner filed a Notice of Appeal on July
19, 2004, in which he argued that the SCDPPPS did not have the
authority to deny him annual review hearings, and parole
eligibility on the grounds he was serving a sentence for a second
or subsequent conviction for a violent crime. On September 19,

2006, the South Carolina Administrative Law Court filed its Order of Dismissal, dismissing the appeal as untimely.

Over a year later, in a letter dated July 29, 2008, Petitioner asked that SCDPPPS reconsider its decision that Petitioner was not eligible for parole and he specifically argued that S.C. Code Ann. § 24-21-640 was not enacted until 2003, and that its application to his convictions was clearly an ex post facto violation. In a letter dated August 8, 2008, SCDPPPS informed Petitioner that the statute was enacted in 1986, and its application to his convictions did not constitute an ex post facto violation. In a letter dated August 23, 2008, Petitioner again requested the SCDPPPS reconsider his parole eligibility status and again argued that the denial of parole was an ex post facto violation, and that his plea agreement plainly stated he would be granted parole eligibility consideration. By letter dated August 29, 2008, SCDPPS again informed Petitioner he was not eligible for parole. The letter indicated this was a final decision by SCDPPS, and that Petitioner could appeal the decision to the Administrative Law Court within thirty (30) days.

In the meanwhile, on July 8, 2003, Petitioner filed a Application for Post Conviction Relief (APCR) (2003-CP-46-1830), and asserted that his warrants were improper, that he was denied the effective assistance of appellate counsel, and that the court lacked subject matter jurisdiction. On May 6, 2005, the PCR

Court filed and entered a Conditional Order of Dismissal, finding that the APCR was untimely, and that the circuit court did have proper jurisdiction. On June 8, 2005, Petitioner filed a timely Notice of Appeal which was denied by the South Carolina Supreme Court on July 8, 2005. The Remittitur issued on September 6, 2005.

Petitioner filed his second APCR on February 23, 2009, (2009-CP-46-801), asserting his guilty plea was entered involuntarily, unknowingly, in violation of due process, and that his guilty plea has been invalidated by the alleged ex post facto violation of his parole eligibility denial. The action was dismissed as untimely and successive. Petitioner timely filed a Notice of Appeal on August 11, 2009. On September 14, 2009, the South Carolina Supreme Court filed its Order of Dismissal. Remittitur was issued on October 1, 2009.

This habeas corpus petition under 28 U.S.C. § 2254 was filed on October 23, 2009.

The following exhibits have been made part of the record here.

> 1. Record on Appeal, Honorable E.G. Burnett, III, Circuit Court Judge
>
> 2. Notice of Appeal, Direct Appeal
>
> 3. Final <u>Anders</u> Brief of Appellant and Petition to Be Relieved as Counsel
>
> 4. South Carolina Supreme Court Memorandum Opinion

5.   Remittitur, September 9, 1996

6.   Application for Post-Conviction Relief, 2003-CP-46-1830

7.   Amended Application for Post-Conviction Relief, 2003-CF-46-1830

8.   Return and Motion to Dismiss 2003-CP-46-1830

9.   Conditional Order of Dismissal, 2003-CP-46-1830

10.  First Notice of Appeal, 2003-CP-46-1830

11.  South Carolina Supreme Court letter dated June 17, 2005

12.  South Carolina Supreme Court Order of Dismissal, July 8, 2005

13.  PCR Court Final Order of Dismissal, 2003-CP-46-1830

14.  Second Notice of Appeal, 2003-CP-46-1 830

15.  Remittitur, July 26, 2005

16.  South Carolina Court of Appeals Order, July 20, 2005

17.  South Carolina Supreme Court letter dated July 25, 2005

18.  South Carolina Supreme Court Order of Dismissal, August 18, 2005

19.  Remittitur, September 6, 2005

20.  Letter from SCDPPPS dated October 12, 2001

21.  Letter from Petitioner dated January 1, 2004

22.  Notice of Appeal, 04-Administrative Law Judge-15-35-ap

23.  Brief of Appellant, 04-Administrative Law Judge-15-35-AP

7

24.  Original Brief, 04-Administrative Law Judge-15-35-AP

25.  Order of Dismissal, 04-Administrative Law Judge-15-35-AP

26.  Letter from Petitioner dated July 29, 2008

27.  Letter from SCDPPPS dated August 8, 2008

28.  Letter from Petitioner dated August 23, 2008

29.  Letter from SCDPPPS dated August 29, 2008

30.  Application for Post-Conviction Relief, 2009-CP-46-801

31.  Return and Motion to Dismiss, 2009-CP-46-801

32.  Conditional Order of Dismissal, 2009-CP-46-801

33.  Applicant's Response Opposing Conditional Order of Dismissal, 2009-CP-46-801

34.  Final Order, 2009-CP-46-801

35.  Notice of Appeal by Way of Petition for Writ of Certiorari, 2009-CP-46-801

36.  South Carolina Supreme Court Order of Dismissal, September 14, 2009

37.  Remittitur, October 1, 2009

38.  Indictments to 1990 Convictions

39.  Sentencing Sheets to 1990 Convictions

The respondent provided the petitioner a copy of its summary judgment motion filed on April 7, 2010, and on April 8, 2010, the petitioner was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12

and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The petitioner filed a response to the motion on May 24, 2010, and withdrew his third ground for relief, as well as motion for an evidentiary hearing on May 27, 2010. The respondent filed an opposition to the motion on June 16, 2010, but agreed to the dismissal of the Petitioner's third ground for relief. Hence it appears consideration of the motion is appropriate.

### GROUNDS PRESENTED BY PETITIONER AND SUPPORTING "FACTS" IN THE FEDERAL HABEAS ACTION

Petitioner raised the following allegations in the instant Petition for Writ of Habeas Corpus:

> **Ground One:** Petitioner's (1995) Guilty Pleas Were Entered Involuntarily; Unknowingly And Thus; In Violation of Due Process.
>
> <u>Supporting Facts</u>: the guilty plea record reflects and supports the fact that the Petitioner made all decisions related to the waiver or abandonment of fundamental trail rights and protections through the guilty plea process with the certainty that, no matter what the sentence was he would someday become eligible for Parole Release consideration.
>
> At the time of his guilty plea, a "Life Sentence" in South Carolina was a Parole Eligible sentence. And thus, the Petitioner had every valid reason to believe that any sentence he received would still entitle him to parole release consideration. He was advised of that fact and right by the Plea Judge, which supported the legal advise [sic] given by his trial Attorney prior to deciding to plead guilty. And so, the Petitioner had a rational and legitimate "good faith" expectation that his guilty plea convictions would not interfere with his right to Parole Release Eligibility.

9

Almost ten (10) years after his guilty plea, the Petitioner has been informed that, at the time of his guilty plea there existed a statute in South Carolina that would negate the Petitioner's "right" to Parole Release Eligibility (S.C. Code Ann. § 24-21-640). Since that statute has been applied to Petitioner's 1995 guilty plea convictions, despite all contrary advise [sic] given to the Petitioner by his Attorney and the Plea Judge, then Petitioner's guilty pleas could not be considered valid with regard to them being the result of knowing, voluntary and intelligent decisions.

Therefore, based on the premise that S.C. Code Ann. § 24-21-640 existed in (1990) some four (4) years prior to the 1995 guilty pleas, the Petitioner's trial Attorney rendered "ineffective assistance of counsel," prior to the guilty plea as he improperly advised the Petitioner as to his "right" to Parole Release Eligibility.

Moreover, under the same premise, the Plea Judge misinformed the Petitioner of his "right" to Parole Release Eligibility prior to accepting the guilty plea and sentencing the Petitioner. As an afterthought, the Solicitor did not make any effort to correct the misinformation provided by the Plea Judge on such a critical issue. The Petitioner has declared that he would never have entertained entering in to a guilty plea, but would have insisted on going to trial if he had any idea he would be exposing himself to a potential sentence of "Life Imprisonment Until Death" through the guilty plea. The Petitioner's primary understanding was that, no matter the sentence he received, he would someday become eligible for parole release.

**Ground Two**: Petitioner's (1995) Guilty Pleas Have Become Invalidated By An Ex Post Facto Violation.

Supporting Facts: The Petitioner's (1995) guilty plea convictions were defined or classified as "violent offense convictions". And as such, due to similar (1989) guilty plea convictions, the (1995) convictions were tallied as "subsequent violent offense convictions" which was necessary to

10

trigger the application of S.C. Code Ann.
§ 24-21-640. The consequence from the application
fo that statute (§ 24-21-640) renders "subsequent
(Second) offenders" convicted of offenses defined
or classified as "violent" ineligible for Parole
Release consideration.

In the Petitioner's case, he plead guilty to
several property offenses (Second (2nd) Degree
Burglary) that were committed in (1989). At some
point in time, (possibly 1986) those 1989 offenses
that the Petitioner plead guilty to became
defined or classified as "violent". There exist
two (2) forms of Second Degree Burglary in South
Carolina. S.C. Code Ann. § 16-11-312(A) and (B).
The (A)form of Burglary Second Degree is
classified as non-violent, whereas the (B)
form is classified as violent. During the (1989)
guilty pleas, the Petitioner was completely
unaware of any differing "violent vs. non-violent"
focus of Second Degree Burglary. Thus, he made no
voluntary, knowing, and intelligent decisions
to plead guilty to a "violent" form of Second
Degree Burglary in (1989). Further, even today,
the Petitioner does not know how the (1989)
Burglaries were determined to be either violent or
non-violent convictions, thus he has additionally
challenged the validity of those (1989) guilty
pleas.

The year following the (1989) guilty pleas, in
(1990) the "Subsequent Violent Offender" provision
(S.C. Code Ann. § 24-21-640) was enacted. In the
Petitioner's case, the (1990) "subsequent violent
offender" provision is being retroactively applied
to the Petitioner's (1989) offense convictions
derived through a guilty plea made before the
statute was enacted. In essence, that retroactive
application "cocks the trigger" based on the
(1989) convictions as the First (1st) violent
offense conviction ended to "trigger" the
application of § 24-21-640 upon any later
conviction for an offense defined or classified as
"violent". And so, the Petitioner's (1995) guilty
plea convictions have been declared as the
requisite "subsequent violent convictions" needed
to "pull the trigger" applying § 24-21-640 which
results in the Petitioner's sentence being

increased from "Life with Parole Eligibility" to "Life Imprisonment Until Death".

The third ground for relief which has been withdrawn on consent was:

> **Ground Three:** Petitioner's (1995) Guilty Pleas Have Become Invalid Due To Them Being Used As A "Back Door" To Enhance His Current (1995) Guilty Plea Conviction And Sentence.

## APPLICABLE LAW

This petition is reviewed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and the following standard governs the court's review of any claims which are timely, exhausted and not procedurally defaulted. In particular, 28 U.S.C. § 2254(d) now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## STATUTE OF LIMITATIONS

The respondent argued that this petition cannot be reviewed on the merits because it is untimely. It appears that the respondent is correct.

Since Petitioner filed his petition on October 21, 2009,[2] which is after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), April 24, 1996, review of Petitioner's two claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997). The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a "properly filed" application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be

---

[2] The petitioner has the benefit of the holding in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379(1988) with respect to the "delivery" date of his Petition.

counted toward any period of limitation under this subsection.

Since Petitioner's conviction became final before the enactment of the AEDPA on April 24, 1996, he had one year until April 23, 1997, to file his federal habeas corpus action unless the running of the period was at any time tolled. See, e.g., Brown v. Angelone, 150 F.3d 370 (4th Cir. 1998); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000).

Petitioner was found guilty on January 23, 1995. He timely filed a Notice of Appeal which the South Carolina Supreme Court dismissed in a memorandum opinion. Petitioner's conviction became final after the South Carolina Supreme Court issued the Remittitur on September 9, 1996. Petitioner had 365 days from September 9, 1996, in which to file this habeas action. Thus, to timely file his federal habeas petition, Petitioner needed to file his petition by September 9, 1997. Petitioner did not file his habeas petition until October 21, 2009, 4425 days after the statute of limitations expired. Petitioner's APCR did not toll the statute of limitations because the statute of limitations had already expired when Petitioner initiated his post-conviction relief action. see, e.g., Harrison v. Hutchinson, 209 F.3d 325, 327-28 (4th Cir. 2000); Pearson v. North Carolina, 130 F.Supp.2d 742 (W.D.N.C. 2001) (one-year limitations period for filing federal habeas not reset by filing of state court

14

motion for post-conviction relief).

Additionally, Petitioner's APCRs were not properly filed. Both APCRs were dismissed as untimely by the PCR Courts. Since the PCR actions were not properly filed, they could not toll the statute of limitations in any event. <u>Allen v. Siebert</u>, 552 U.S. 3, 6-7, 128 S.Ct. 2, 4-5 (2007); <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 125 S.Ct. 1807 (2005).

Petitioner argues that 28 U.S.C. § 2244(d)(1)(D) governs as the starting point for the beginning of the statute of limitations, which section states that the statute of limitations for filing a federal habeas petition may begin on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." However, even if utilized, § 2241(d)(1)(D) does not save this petition.

On October 12, 2001, the SCDPPS rendered its final decision that Petitioner was not parole eligible and informed Petitioner of his thirty (30) day appeal rights to the administrative law judge. Petitioner did not appeal. Over twenty seven (27) months later, on January 1, 2004, he did ask the SCDPPS for a copy of its 2001 decision. He received the requested decision on January 27, 2004, and then waited over four (4) months, until July 19, 2004, to notice an appeal with the administrative law judge. The appeal was denied on the basis that it was not noticed within

15

thirty (30) days of the final decision of the SCDPPS dated October 12, 2001. The appeal was denied as untimely on September 19, 2006. Thus October 21, 2001, is the date the statute began to run even if 28 U.S.C. § 2244(d)(1)(D) governs.

For argument sake, even if somehow September 19, 2006, was considered the latest possible date on which the AEDPA statute began to run, the instant petition is likewise untimely. Even under this scenario, Petitioner had to file his federal petition by September 19, 2007. He did not do so. Rather he rested on his right to bring a federal petition for seven hundred sixty three (763) days after September 19, 2006, until October 19, 2009, to file here.

The timeliness of his petition is not effected by the fact that he brought a second APCR two and one half (2 1/2) years later on February 23, 2009, which APCR was dismissed as successive and untimely. All of Petitioner's claims are barred under the AEDPA statute of limitations and the petition should be dismissed on that basis.

<u>EQUITABLE TOLLING</u>

Petitioner argues that his petition is timely if the court finds it proper to repeatedly apply equitable tolling of the limitations period. His argument for the application of equitable tolling is the same as his argument for starting the statute under 28 U.S.C. §2244 (d)(1)(D) and is also unavailing.

To avoid application of § 2244(d) regarding the timeliness of the instant federal habeas petition, Petitioner must show that the one-year limitations period should be equitably tolled under applicable federal law. See Holland v. Florida,___ U.S. ____, 130 S.Ct. 2549 (2010) (concluding that § 2244(d) is subject to the principles of equitable tolling). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005) (citation omitted). Equitable tolling is available only in "those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result ." Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (internal quotation marks and citation omitted); see also United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246.

Petitioner has failed to meet his high burden.

As the Fourth Circuit stated in Harris v. Hutchinson:

> [A]ny invocation of equity to relieve the strict
> application of a statute of limitations must be

17

> guarded and infrequent, lest circumstances of
> individualized hardship supplant the rules of
> clearly drafted statutes. To apply equity
> generously would loose the rule of law to whims
> about the adequacy of excuses, divergent responses
> to claims of hardship, and subjective notions of
> fair accommodation. We believe, therefore, that
> any resort to equity must be reserved for those
> rare instances where-due to circumstances external
> to the party's own conduct-it would be
> unconscionable to enforce the limitation period
> against the party and gross injustice would
> result.

209 F.3d 325, 330 (4th Cir. 2000).

Furthermore, courts have held that "unfamiliarity with the legal process, lack of representation, or illiteracy does not constitute grounds for equitable tolling." Harris, 209 F.3d at 330-32. Likewise, mistake of counsel does not serve as a ground for equitable tolling. Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999). See also, Smaldone v. Senkowski, 273 F.3d 133, 138 (2nd Cir. 2001) ("[A]ttorney error [is] inadequate to create the 'extraordinary' circumstances equitable tolling requires.")

Nor are prison conditions, such as lockdowns or misplacement of legal papers, normally grounds for equitable tolling." Id.; see also Jones v. South Carolina, 2006 WL 1876543, (D.S.C. June 30, 2006) (unpublished) ("Other courts addressing equitable tolling have found that 'extraordinary circumstances' are not: having an inadequate law library, attorney error, claims of actual innocence, reliance on other inmates' advice, ignorance of the AEDPA filing deadline, or even (in some instances) petitioner

illness."). It is clear that a <u>pro</u> <u>se</u> prisoner's ignorance of the law is not a basis to invoke equitable tolling. <u>United States v. Sosa</u>, 364 F.3d 507, 512 (4th Cir. 2004); <u>Cross-Bey v. Gammon</u>, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); <u>United States v. Riggs</u>, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling... ."); <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir.2001) (rejecting the argument that a <u>pro se</u> prisoner's ignorance of the law warranted equitable tolling); <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) (same).

Lastly, in order to show diligence, the prisoner must show diligence not merely at the federal level, but throughout the entire state process in order to have equitable tolling available to him. <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999). "[E]quity is not intended for those who sleep on their rights." <u>See</u>, <u>Fisher v. Johnson</u>, 174 F.3d 710 (5th Cir. 1999) (citing <u>Covey v. Arkansas River Co.</u>, 865 F.2d 660, 662 (5th Cir. 1989)). Here, Petitioner failed to show diligence in pursuing his rights repeatedly since 1996; it is not unconscionable to refuse to equitably toll the many time limits he violated.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the court find that the instant petition was filed beyond the AEDPA one year statute of limitations and is not subject to equitable tolling. Therefore the petition should be dismissed as untimely, any outstanding motions be denied as moot, and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
August ___4___, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).